Erin SEABOLT, D.C.; Eric Tondera, D.C.; and Jeffrey G. Nash, D.C.

v.

TEXAS BOARD OF CHIROPRACTIC EX-AMINERS; Oliver R. Smith, Jr., D.C.; Carolyn Davis–Williams, D.C.; Keith Hubbard, D.C.; Cynthia Vaughan, D.C.; Richard Gilespie, D.C.; John Weddle, D.C.; Dora Valverde; Hubert Pickett, J.R., and Lisa Garza.

No. CIV. A. G–97–672.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 17, 1998.

Roger W. Calton, Roger W. Calton and Associates, Laguna Niguel, CA, for Plaintiffs.

Terence L. Thompson, Office of Attorney General, Austin, TX, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs, a group of chiropractic physicians, seek a declaration from this Court that

a Texas law prohibiting chiropractors from using the professional titles "chiropractic physician" or "chiropractic sports physician" in their advertising is unconstitutional under the First and Fourteenth Amendments of the Federal Constitution. Now before the Court is Plaintiffs' Motion for Summary Judgment. For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **DENIED.**

## I. FACTS

Plaintiffs are all doctors of chiropractic, licensed to practice in Texas. Prior to the enactment of the challenged statute in 1995, each Plaintiff had held himself or herself out to the public as a chiropractic physician, using the title on letterhead, business cards, advertising, and in public speaking engagements. As a result of the Texas Legislature's enactment of a prohibition on chiropractors' use of the term "physician" in their advertising, Plaintiffs claim they have lost status, prestige, and new patients.

Use of the term "chiropractic physician" first became an issue in 1990. In December of that year, Attorney General Jim Mattox opined that the Texas Board of Chiropractic Examiners ("the Board") had the authority to promulgate a rule that allowed licensed Texas chiropractors to use the title "chiropractic physician." One month later, the State Board of Medical Examiners requested that Mattox's successor, Dan Morales, reconsider that position. Attorney General Morales declined, stating that this decision was not based upon his agreement with the Mattox opinion, but instead only reflected a decision to refrain from revisiting matters decided before his term. On March 18, 1991 the Board's Rule 80.2, codified at TEX. ADM. CODE ANN. § 80.2, became effective, and Texas chiropractors were allowed to use the title "chiropractic physician" for the first time.

The Texas Chiropractic Act came up for sunset review during the 73rd Legislative Session. Some members of the Legislature apparently determined that a stringent review of the Chiropractic Act was warranted because of perceived abuses in the chiropractic profession and lack of any effective enforcement of the then existing Chiropractic Act and rules. Members of the legislature criticized the Chiropractic Board's "self-serving" efforts to expand the scope of chiropractic practice beyond the scope defined in the Chiropractic Act. Representative David Counts indicated that the Legislature wanted to send "a clear message that the Chiropractic Board was expected to change its course and take action to protect the interest of the public as opposed to protecting its financial interest in expanding chiropractic practice." Accordingly, the Legislature invalidated Rule 80.2 and many other rules promulgated by the Board. It also passed the Health Professions Council Act, which prohibits advertising by a health professional which causes confusion or misunderstanding as to the credentials, education, or licensure of a health care professional or which uses a professional name or title or professional identification that is expressly or commonly reserved to or used by another profession or professional. *See* TEX. REV. CIV. STAT. ANN. art. 4512p, § 4(a) and (b)(5), (9).

Pursuant to the Legislature's mandate of June 19, 1993, the Board repealed its rule allowing chiropractors to use the title "chiropractic physician." However, an identical version of the rule was proposed for readoption by the Board to take effect on July 11, 1994. Before this could occur, a state court lawsuit brought against the Board prevented the new rule from being adopted or enforced. The lawsuit was filed on July 8, 1994, in the 200th District Court of Travis County. The plaintiffs sought an injunction preventing promulgation of the rule and challenging the AG Opinion JM–1279 which purported to authorize it. The state court granted a permanent and final injunction on December 13, 1994, holding that the Board exceeded its authority in promulgating Rule 80.2. The state court judge also expressly overruled the opinion of former Attorney General Mattox on the subject.

In its 1995 session, the Texas Legislature considered at least three different bills that attempted to address the issue of a chiropractor's use of the title "chiropractic physician" and derivations of that term. One such bill was S.B. 718, which passed the Senate in a form which made any chiropractor subject to discipline for using the title "physician,"

"chiropractic physician," or any combination or derivation of the term "physician" for any purpose. An amendment to another bill allowed chiropractors to use the term "chiropractic physician" if necessary in order to file a claim for services using predetermined coding, but otherwise banned the term, and derivations of the term, in advertising to the public. This amendment protected chiropractors from disciplinary action if they had to use pre-coded insurance or Medicaid forms in order to receive payment for legitimate services if those services were categorized under "chiropractic physician" headings. The new legislation was codified at TEX. REV. CIV. STAT. ANN. art. 4512(b) § 14a(19)

Plaintiffs claim they are entitled to relief from the advertising prohibitions of TEX. REV. CIV. STAT. ANN. art. 4512(b) § 14a(19) on two grounds. First, they assert that the prohibitions violate their First Amendment rights. Second, they assert that the statute violates the Equal Protection Clause by prohibiting only chiropractors and not medical doctors, osteopaths, or naturopaths from using the term "physician." The Court finds neither of these arguments persuasive, thus Plaintiffs' Motion for Summary Judgment is DENIED. The Court agrees with Defendants that the challenged statute, and the regulatory scheme of which it is a part, is a constitutional limitation on commercial speech in important areas of legislative concern—the public health and welfare of Texas citizens, the licensing and regulation of the state's health care providers, and the protection of its consumers from false and misleading advertising.

## II. STANDARD OF ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Aside from the substantive grounds discussed below, Plaintiffs request that the Court grant their Motion for Summary Judgment because Defendants' Response was filed two weeks late. Plaintiffs point to Local Rule 6E which states that a failure to respond by the submission date "will be taken as a representation of no opposition." While the language of the Rule suggests that the Court view a Motion as unopposed in this circumstance, this Court would be irresponsible in taking such a position on the facts of this case. Defendants requested an extension from the original deadline set by the Court, which was granted, and they have filed a Response, though untimely, thus there can be no doubt that Plaintiffs' Motion is opposed. Even if the Motion were unopposed, the Court would still have an obligation to consider applicable law and relevant facts and make a ruling on that basis. Without Defendants' Response which provides insight into the legislative process and relevant evidence, that would be impossible for this Court. The Court determines that the appropriate sanction in this instance is a fine of $250.00 to be personally paid by Defense Counsel Terrence Thomas, Assistant Attorney General, under FED. R. CIV. P. 37 for violation of this Court's Order.

## III. FIRST AMENDMENT CLAIM

In 1980, the Supreme Court of the United States announced a four-part framework for analyzing advertising restrictions under the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct.

2343, 65 L.Ed.2d 341 (1980). The Court stated:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566, 100 S.Ct. at 2351. Thus, under the first part of the inquiry, commercial speech that is false, deceptive, or misleading may be prohibited in its entirety by the State without offending the Constitution. A court need never reach the second step of the inquiry if the speech prohibited is not protected by the First Amendment. In the instant case, Defendants argue persuasively that Plaintiffs' First Amendment claim fails because the prohibited speech is not protected. Defendants also demonstrate that the restriction on Plaintiffs' speech is no more broad than necessary. *See In the Matter of R.M.J .*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)("restrictions upon [professional] advertising may be no broader than reasonably necessary to prevent the deception").

█ Defendants' most compelling evidence demonstrating the confusing and misleading nature of the term "chiropractic physician" or "chiropractic sports physician" is a public opinion poll conducted by the Eppstein Group in November of 1993. The results of the poll demonstrated that thirty-five percent of the eight hundred Texans surveyed believed that a chiropractic physician was a chiropractor who had attended medical school. Forty-eight percent believed chiropractic physicians had additional training and/or skills that ordinary chiropractors did not possess. Thirteen percent believed that a chiropractic physician was a highly trained chiropractor. All of these impressions are wrong. A chiropractor does not attend medical school, and chiropractic training differs significantly from that of medical doctors. In particular, most medical doctors spend several years in supervised clinical training after medical school while most new chiropractors go immediately into practice. Furthermore, under repealed Rule 80.2, all chiropractors would be allowed to designate themselves *chiropractic physicians; the* designation would not indicate any additional level of training or skills. The findings of the poll are significant and demonstrate that the Legislature acted rationally in determining that a large number of Texas consumers could be misled by the title "chiropractic physician."

Additionally, Defendants point out that in a suit seeking to enjoin proposed Rule 80.2 the Honorable John K. Dietz of the 200th District Court of Travis County found that "the public at large will be irreparably harmed by the confusion as to scope and legislative limitations of the chiropractic practice [if the Board's Rule 80.2 becomes effective.]" Defendants also argue that in common parlance the term "physician" is understood to mean medical doctor, and they cite to Webster's Dictionary for support. These and other findings influenced the legislation that came before the 74th Legislature. At the very least, Defendants have demonstrated that a material fact issue exists as to whether the prohibited speech is misleading and is thus unprotected by the First Amendment.

Even if this Court were to determine that the prohibited speech is not misleading, Defendants persuasively argue that the statute is still constitutional under the *Central Hudson* test outlined above. Consumer protection, health-care licensing, and protection of the public health are substantial governmental interests served by the challenged statute; the Legislature has made a rational determination that these interests are directly advanced by the regulation's prohibition. The decision of the United States Court of Appeals for the Fifth Circuit in *Maceluch v. Wysong,* 680 F.2d 1062 (5th Cir.1982), a factually analogous case in which Doctors of Osteopathy sued to use the title M.D., supports this conclusion. In that case the Court upheld Texas' licensing scheme for medical

doctors, finding that a rational basis existed for the Legislature's restriction on the commercial speech of doctors of osteopathy—namely the promotion of a distinction between medical doctors, M.D.'s, and doctors of osteopathy, D.O.'s. *See Maceluch*, 680 F.2d at 1069. Notably, the training of medical doctors and doctors of osteopathy is far more similar than the training of medical doctors and chiropractors.

Despite the evidence and authorities cited above, Plaintiffs argue that as a matter of law the State cannot show that allowing chiropractors to identify themselves as physicians is misleading. For support, Plaintiffs rely upon the following evidence: (1) former Attorney General Mattox's AG Opinion No. JM–1279 which states that the terms doctor and physician are functionally synonymous; (2) the scope of the Medicare definition of physician which includes chiropractors; (3) authorization under the challenged statute allowing Texas chiropractors to use the "physician" designation in pre-printed Medicaid and insurance forms; (4) the laws of twenty-three states which authorize chiropractors to identify themselves as chiropractic physicians; and (5) the lack of complaints about chiropractic advertising from 1992 through 1997, when chiropractors lawfully identified themselves as physicians. None of this evidence is sufficient to establish as a matter of law that the speech prohibited is not misleading to Texas consumers; nor is it sufficient to induce this Court to overturn a rational decision made by the Texas Legislature. To begin with, AG Opinion JM–1279 has been overruled by the ruling in the state court lawsuit and by subsequent legislative enactment. Second, no Court has found a prohibition on speech substantially similar to the speech at issue here to be unconstitutional. The lack of similar restrictions under federal law or the law of other states, the lack of consumer complaints, and the Legislature's decision to allow chiropractors to designate themselves as physicians for purposes of payment do not establish as a matter of law that advertising using the terms "chiropractic physician" or "chiropractic sports physician" would not mislead the public. Plaintiffs' evidence also does not establish as a matter of law that the prohibition at issue fails to advance an important governmental interest. Accordingly, Plaintiffs' Motion for Summary Judgment on their First Amendment claim is **DENIED.**

## V. EQUAL PROTECTION CLAIM

■ Plaintiffs' second complaint is that they are denied equal protection of the laws because medical doctors, osteopaths, and naturopaths may all advertise using the term physician, but chiropractors may not. This challenge must fail on its face because Plaintiffs have not and cannot establish that they are "similarly situated" to medical doctors or osteopaths. Medical doctors and osteopaths are licensed by the Texas Board of Medical Examiners, and they are the only members of the healing profession allowed to identify themselves as "physicians." They have unrestricted licenses to practice medicine. Chiropractors, on the other hand, are licensed by the Texas Board of Chiropractic Examiners and the scope of their practice is strictly limited by law. Furthermore, although the Healing Arts Identification Act refers to naturopathic physicians, no such physicians exist in the state of Texas because the Naturopathy Act was repealed in 1961. Consequently, the existence of this unused title bears no weight in favor of Plaintiffs' argument.

■ Even if Plaintiffs could make out an equal protection challenge, controlling precedent from the United States Court of Appeals for the Fifth Circuit states the applicability of the rational relationship test to challenges of professional designations. *See Maceluch v. Wysong*, 680 F.2d 1062 (5th Cir.1982). In the instant case, "[i]t is enough that the Texas Legislature could rationally have decided that differences exist, and warranted a separate designation for purposes of public identification." *Id.* at 1068. Plaintiffs' argument that the challenged statute must survive strict scrutiny because First Amendment rights are at issue is patently wrong in light of the clear Fifth Circuit precedent set forth in *Maceluch.*

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is **DENIED.** And, in light of the evidence submitted, the Court is frankly baffled that Defendants have not filed a Motion for Summary Judgment. Perhaps Defendants' counsel has some strategic motive for failing to do so, though what that strategy could be is beyond this Court's ability to imagine given that the object of litigation is usually to win at the earliest possible date and at the least possible expense to the client.

Additionally, Defendants' counsel Terence L. Thompson, Assistant Attorney General, is **HEREBY SANCTIONED** and personally fined $250.00 under FED. R. CIV. P. 37 for failure to comply with this Court's Scheduling Order requiring Defendants' Response to be submitted by October 20, 1998. Payment of such fine shall be made within fifteen (15) days of this Order, by means of a certified check, made payable to the United States District Clerk, for the Southern District of Texas. **FAILURE TO MAKE TIMELY PAYMENT WILL RESULT IN ADDITIONAL SANCTIONS.** The Court granted Defendants' requested extension, yet Defendants' counsel still submitted a Response two weeks after this Court's extended deadline. The Court's extension was not a suggestion, it was an Order. And this Court, like all courts, expects its lawful orders to be obeyed in a timely fashion, *especially* when the person so ordered is charged with protecting the citizens and laws of the State of Texas. Defendants' counsel is required to pay the fine out of his own pocket rather than the State coffers funded by taxpayers' dollars, and he is advised that he will be held in civil contempt for any further violations of this Court's Orders.

**IT IS SO ORDERED.**