

# NUMBER 13-19-00266-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DAVID GOSALVEZ III,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

### On appeal from the 103rd District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

Appellant David Gosalvez III appeals his conviction of retaliation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 36.06. By four issues, Gosalvez argues (1) the trial court erred in making "improper comments on the weight of the evidence"; (2) the trial court erred in failing to include jury charge instructions on unanimity; (3) the trial court

erred in admitting evidence of extraneous offenses; and (4) the existence of cumulative error necessitates a reversal. We affirm.

## I.    BACKGROUND

On March 13, 2018, Gosalvez was arrested on charges of aggravated assault; assault on a public servant; obstruction or retaliation; deadly conduct; resisting arrest, search, or transport; driving while intoxicated; and reckless driving.[1] At trial, Department of Public Safety Trooper Eulalio Mendez testified he pulled over Gosalvez at approximately 11:10 p.m., after he observed Gosalvez's "Tahoe pull out of a local [parking] lot" "with a woman hanging [off] the left-side door."

According to Trooper Mendez, Gosalvez's eyes were red, he could smell "an odor of alcohol" emanating from Gosalvez's breath, and Gosalvez admitted to drinking four beers. Although Gosalvez initially appeared "very calm" and cooperative, and he voluntarily performed several standardized field sobriety tests (SFSTs), Gosalvez's demeanor changed after Trooper Mendez placed Gosalvez under arrest for driving while intoxicated. Trooper Mendez said Gosalvez became combative when he attempted to place Gosalvez into the patrol unit. Gosalvez moved "violently," spat at him, and then kicked him in the leg.

A video recorded from Trooper Mendez's patrol unit dash cam was admitted into evidence. While the initial interaction between Gosalvez and officers cannot be seen, Gosalvez can be heard on the video making several disparaging and threatening statements to Trooper Mendez, including:

- "Let me tell you something, officer. I'm gonna remember who you are."

---

[1] This case only deals with Gosalvez's indictment charging two counts of obstruction or retaliation. It is unclear from the record what became of the remaining charges and whether they were separately indicted.

2

- "Mendez, you're going to get it, brother."

- "Mr. Mendez, I'll look for you. You don't know me but—."

- "Mr. Mendez, I feel sorry for you. I hope you have kids motherf-cker cause you're going to get it."

- "You don't know who I know."

- "[Inaudible] f-cking loose. I'll f-ck you up like a motherf-cker. I'll kick your ass."

- "Mr. Mendez, you better hope your family is f-cking secured, motherf-cker."

- "Let's go man-to-man. I know Calaveras. I know f-cking gangbangers."

Trooper Mendez explained that the Calaveras are a local biker gang. Trooper Mendez testified he interpreted Gosalvez's statements to be threats against him and his family made in retaliation for the arrest.

A supervising officer present during this exchange requested assistance from a "caged unit" because Trooper Mendez's vehicle did not have a divider. Trooper Mendez stated that the assisting officers placed Gosalvez in a "long restraint," wherein Gosalvez's legs and arms were "tied down on a long board."

Trooper Mendez said the restraint was removed at the jail, although Gosalvez remained aggressive, yelling expletives at him. When Gosalvez "attempt[ed] to walk towards [him] in a very violent manner," Trooper Mendez testified he drew his department-issued taser and instructed Gosalvez to sit down. On cross-examination, Trooper Mendez testified he could not recall whether he winked at the defendant prior to the defendant charging at him, but he conceded he made the statement, "You're a real tough guy. You sat down real quick, didn't you?" once Gosalvez complied with Trooper Mendez's orders

3

to sit down.[2] Trooper Mendez said that by that point in the evening, having been on the receiving end of threats for "several hours," he lost his composure and succumbed to "human nature."

Trooper Mendez also testified to an incident involving Gosalvez occurring approximately one year after his arrest. Following a court hearing, Gosalvez sent Trooper Mendez's wife a "friend request" on Facebook. There was no accompanying message to the request.

Troopers Carlos Javier Rodriguez and Jason Scott Vela testified they observed Gosalvez being verbally and physically combative during his arrest. Trooper Rodriguez testified he assisted in the initial attempt to place Gosalvez inside Trooper Mendez's patrol unit. Trooper Rodriguez said Gosalvez was "kicking and screaming," "attempted to spit" at him, and spat on Trooper Mendez. In response, Trooper Rodriguez said he grabbed Gosalvez by his t-shirt and "tried to place it over his head so he would quit spitting." Trooper Rodriguez testified he had to lay on top of Gosalvez in order to subdue him until "another officer came by that could put him inside their squad car with the cage." While Gosalvez was waiting to be booked at the jail, Trooper Rodriguez said Gosalvez kept demanding to speak to and "shouting towards" Trooper Mendez.

Gosalvez also testified at trial. Gosalvez, a chiropractor, stated he felt as if he had been treated unfairly by Trooper Mendez, and the mistreatment was a consequence of Trooper Mendez's resentment because of Gosalvez's socio-economic status as a

---

[2] Surveillance footage of the jail booking area admitted at trial shows Gosalvez charging toward Trooper Mendez as Trooper Mendez walks by him. Gosalvez can be heard yelling, "Don't f-cking wink at me. That's a f-cking threat to me," as he stands up and rushes towards Trooper Mendez before Trooper Mendez turns around and takes out his taser.

4

"doctor."[3] "I think he got offended by the fact that I was belittling him[4] or that I was doctor and he's an officer. I felt that vibe from the get-go," testified Gosalvez.

Gosalvez testified to the events leading up to his arrest. He stated that he had gone to South Padre Island to attend a concert with friends, and he had given "the mother of [his] child" a ride. At the concert, she became upset when she saw another female he had dated while they were separated. Gosalvez testified that he left the concert to avoid further confrontation. "[A]s I'm reversing out of the parking lot, . . . [s]he literally gets on my vehicle and is standing on my rail board, holding onto my mirror, and banging on my window," said Gosalvez, who was pulled over by Trooper Mendez shortly after.

Gosalvez said he was cooperative with the SFSTs because he knew he was not intoxicated. When Trooper Mendez placed Gosalvez under arrest, Gosalvez stated he did not "feel it was justified." Gosalvez denied spitting at or kicking Trooper Mendez. Gosalvez maintained he owns his "own little private gym," and he is familiar with martial arts; thus, he could have inflicted injuries had that been his intent, but it was not. Gosalvez testified:

> I'm no threat to society. I do not want to harm anyone. I have children myself. At the time of arrest, I felt that I was being treated unfairly[,] and I knew that my livelihood and license could be jeopardized if I were to get in trouble[,] and that's the only thing that was on my mind.

---

[3] Chiropractors are not physicians or medical doctors. *Chiropractic*, WIKIPEDIA, https://en.wikipedia.org/wiki/Chiropractic (last visited Mar. 9, 2021); *see Seabolt v. Tex. Bd. of Chiropractic Exam'rs*, 30 F.Supp.2d 965, 968 (S.D. Tex. 1998) (noting that "[a] chiropractor does not attend medical school, and chiropractic training differs significantly from that of medical doctors. In particular, most medical doctors spend several years in supervised clinical training after medical school while most new chiropractors go immediately into practice.").

[4] In the recordings admitted at trial, Gosalvez can be heard making several comments regarding the income disparity between himself and Trooper Mendez.

Gosalvez apologized for his behavior, and stated he was unfamiliar with the criminal justice system and had never been convicted of a felony or crime of moral turpitude.

On cross-examination, Gosalvez maintained, "I've never really been in trouble . . . . I couldn't tell you how the law works. I didn't even know a state trooper from [a police department officer]." The State requested to approach the bench and notified the trial court that it intended to ask Gosalvez about his arrest record, which indicated Gosalvez had been arrested for assault family violence and violation of a protective order. Gosalvez objected, arguing that the prejudice to him outweighed any probative value to the State. The trial court allowed the State to briefly question Gosalvez on his two prior arrests.

During cross-examination, Gosalvez also conceded to threatening Trooper Mendez:

[State:]        And it wasn't just one phrase, was it? It wasn't one threat?

[Gosalvez:]   No, ma'am.

[State:]        It was several threats, would you agree with me?

[Gosalvez:]   Yes, ma'am.

[State:]        And that it was because he arrested you and he was investigating a crime; is that not true?

[Gosalvez:]   Correct.

. . . .

[State:]        Now, would you agree that Trooper Mendez was actually very polite to you?

[Gosalvez:]   He wouldn't talk to me. He would do this. The whole time just smirk at me like: Hi, I've got a badge. I've got power.

6

[State:]      That's your testimony and your perception, not Trooper Mendez. You saw Trooper Mendez up here. He doesn't seem like a smirker, does he?

[Gosalvez:]   He was that night.

[State:]      And would you agree with me that even if he did smirk at you, you're not allowed to say, "I'm going to kill you" or "I'm going to find your family and hurt them"?

[Gosalvez:]   Correct.

. . . .

[State:]      Threat after threat and, again, you're admitting to every single element of this crime; is that not true?

[Gosalvez:]   Yes, ma'am.

The jury returned a guilty verdict, and the trial court assessed punishment at five years' imprisonment probated for five years' community supervision. *See id.* § 12.34. This appeal followed.

## II.      JUDICIAL COMMENTARY

By his first issue, Gosalvez asserts that the trial court violated his right to due process because it made "direct comments disparaging the defense."

## A.     Standard of Review & Applicable Law

A trial court may exercise "reasonable control" over the examination of witnesses and the presentation of evidence so as to "(1) make those procedures effective for determining truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." TEX. R. EVID. 611(a)(1)–(3). When doing so, "[t]he trial judge shall maintain an attitude of impartiality." *Ex parte Scott*, 541 S.W.3d 104, 125 (Tex. Crim. App. 2017) (quoting *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)). Both due

7

process and article 38.05 of the Texas Code of Criminal Procedure require a neutral and detached judge. *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014) (citing *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006)); *see* U.S. CONST. amend. XIV; TEX. CODE CRIM. PROC. ANN. art. 38.05 (providing that a judge shall not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case").

"The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Brown v. State*, 122 S.W.3d 794, 798 & n.8 (Tex. Crim. App. 2003) (noting that a trial judge must refrain from making any remark calculated to convey his opinion of the case because jurors give special and particular weight to the language and conduct of the trial judge); *Proenza v. State*, 555 S.W.3d 389, 397 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). However, "[c]ritical, disapproving, or even hostile remarks made during trial 'ordinarily do not support a bias or partiality challenge.'" *Gonzalez v. State*, No. AP-77,066, __ S.W.3d __, __, 2020 WL 6482409, at *55–56 (Tex. Crim. App. Nov. 4, 2020) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *see also Nunez v. State*, No. 13-17-00671-CR, 2019 WL 1831715, at *6–7 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2019, pet. ref'd) (mem. op., not designated for publication). "'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" will not support a claim of judicial impropriety unless "they are so biased or antagonistic 'as to make fair judgment impossible.'" *Gonzalez*, __ S.W.3d at __, 2020 WL 6482409, at *55–56 (quoting *Liteky*,

510 U.S. at 555–56). When a trial judge does improperly comment, it constitutes reversible error only if the comment was "reasonably calculated to prejudice the defendant's rights." *Ex parte Scott*, 541 S.W.3d at 125.

## B.    Analysis

Gosalvez complains of two instances during which he claims the trial court made improper statements. The first occurred during defense counsel's cross-examination of Trooper Vela regarding Gosalvez's arrest:

[Defense counsel:]  What part of the boy [sic] hit the ground first?

[Vela:]                    I don't know, sir.

[Defense counsel:]  Well, was it his torso? His face?

[State:]                   Objection, Your Honor, asked and answered.

[Defense counsel:]  You were there.

[Vela:]                    I think it was the entire body at the same time.

[Defense counsel:]  I know, but what part? Was it the back of his body?

THE COURT:         [Defense counsel], what is the relevancy of all this?

[Defense counsel:]  The injuries inflicted.

THE COURT:         The injuries on the trooper? This is not about the trooper.

[Defense counsel:]  Judge, may I?

THE COURT:         Listen to me, what is the relevancy of you going over the trooper's injuries[?] He didn't come here to complain about his injuries. He—there's no reason why we should be going over the trooper's injuries.

[Defense counsel:]  Judge, I object to the Court—

THE COURT:         Stay relevant.

9

[Defense counsel:]  I object to the Court giving an opinion as to what's relevant, especially in front of the jury. You know, that's commenting on the weight of the evidence.

THE COURT:  I object to you continuing to violate my rule to get to the point.

[Defense counsel:]  I object to that, Your Honor. I mean, I'm entitled under the Sixth Amendment to cross-examine.

THE COURT:  I object to you continuing to take me on on [sic] stuff that we have talked about. Get relevant.

[Defense counsel:]  Can we talk about this outside the presence of the jury?

THE COURT:  No, sir. You sit down and you continue your questioning and get relevant, [defense counsel].

[Defense counsel:]  Judge, again, you're making a comment—

THE COURT:  Please get relevant.

[Defense counsel:]  —on the weight and we object.

[Defense counsel:]  Now, let's answer my questions.

The second allegedly improper statement occurred during Trooper Mendez's testimony on cross-examination regarding an SFST administered to Gosalvez:

[Defense counsel:]  How many—what number—how many steps did [Gosalvez] take when he walked the nine steps back?

[Mendez:]  I don't recall at this time, sir.

[Defense counsel:]  That's important for this jury to determine whether he was impaired or not.

[State:]  Objection, Your Honor, relevance.

THE COURT:  What is it?

[State:]  Relevance, again, to the—we're not here about how many steps he took.

10

[Defense counsel:]  It's relevant because that was the reason for arrest and his belief—

THE COURT:  Okay. Can you-all approach because this is going to be my position from here on all these objections. He is charged with obstruction regardless if he was—

[Defense counsel:]  No.

THE COURT:  You show me a case that says that—

[Defense counsel:]  Can I say why? Because the reason he's pissed off or upset—

THE COURT:  It doesn't matter the reason.

[Defense counsel:]  That's up to the jury to decide, Judge.

THE COURT:  It doesn't matter what the reason is. You show me a case where it says that is it—is it valid—I mean, it is a defense to this kind of charge that the underlying offense he was stopped for was invalid to begin with.

[Defense counsel:]  If they brought it during direct, I'm entitled to cross-examine.

THE COURT:  No, is there such a case? Is there such a case?

[Defense counsel:]  I don't know. That was not—I wasn't supposed to research that.

THE COURT:  Does the law say that?

[Defense counsel:]  All I know is the Sixth Amendment right allows me the right to cross-examine and confront.

THE COURT:  I understand that, but—

[Defense counsel:]  And cross-examine on all issues that were raised.

THE COURT:  [Defense counsel], it's not unfettered. Your Sixth Amendment right is not unfettered. It has to be relevant.

[Defense counsel:]  It's relevant. That was the reason for the arrest.

11

[State:]                Your Honor—

THE COURT:       Hold on. All right. Sustained. Move on.

In the first exchange, the trial court sua sponte interjected with an inquiry as to the relevance of Gosalvez's line of questioning. In the second exchange, the State objected on relevancy grounds, and the court invited a response from defense counsel. The trial court can exercise reasonable control to manage the admissibility of evidence, and this reasonable control extends to sua sponte inquiries regarding evidentiary relevancy. *See* TEX. R. EVID. 611(a); *Simon*, 203 S.W.3d at 590; *Avilez v. State*, 333 S.W.3d 661, 674 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (concluding it was not unfair of the trial court to constantly reinforce the importance of relevance); *see also Nunez*, 2019 WL 1831715, at *8 (providing it was permissible under article 38.05 where the trial court "interrupt[ed] [appellant's] counsel during cross-examination of [an officer], without any prompting or objections from the [S]tate, asking about the relevance of the cross-examination").

Although the trial court appeared to show frustration with Gosalvez's counsel at trial, expressions of "impatience, dissatisfaction, annoyance, and even anger" alone do not demonstrate bias or impartiality. *Garcia*, 246 S.W.3d at 147; *see Gonzalez*, __ S.W.3d at __, 2020 WL 6482409, at *55–56; *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) ("[A] trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence."); *see also Nunez*, 2019 WL 1831715, at *9. Contrary to Gosalvez's assertions, the trial court's inquiry into relevance in either instance does not appear to have been made to bolster the State or diminish Gosalvez's trial strategy and is distinguishable from cases where

12

the trial court's statements were determined to be improper. *See Simon*, 203 S.W.3d at 590; *cf. Proenza*, 555 S.W.3d at 397 (concluding a trial court improperly commented on the weight of the evidence when it interrupted witness testimony to indicate its disbelief in appellant's position that he thought he could not seek medical care for a minor without proper documentation and thus determining that the trial court had "diminished the credibility of [appellant's] approach to the case"); *see also Navarro v. State*, No. 13-17-00197-CR, 2018 WL 3386350, at *5–6 (Tex. App.—Corpus Christi–Edinburg July 12, 2018, no pet.) (mem. op., not designated for publication) (concluding the trial court had not improperly commented on the weight of witness testimony when the court stated that the witness was "the chief of police" and the court did not "know any greater qualification than that").

The statements by the trial court here did not amount to a violation of Gosalvez's due process rights nor were they made in violation of article 38.05. *See* U.S. CONST. amend. XIV; TEX. CODE CRIM. PROC. ANN. art. 38.05; *Proenza*, 541 S.W.3d at 791. Accordingly, we overrule Gosalvez's first issue.

### III.    JURY UNANIMITY

Gosalvez next argues the jury charge was erroneous because it allowed for a non-unanimous verdict.

### A.    Standard of Review

In analyzing a jury-charge issue, we first determine whether error exists. *Hernandez v. State*, 533 S.W.3d 472, 481 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g)). If we find error, then we consider whether the error was harmful under the

13

appropriate standard. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza,* 686 S.W.2d at 171).

When, as here, the alleged charging error is not preserved, the court will reverse only "upon a showing of 'egregious harm,' which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)); *Almanza*, 686 S.W.2d at 171. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (quoting *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). When considering whether a defendant suffered egregious harm, we must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 27; *French v. State*, 563 S.W.3d 228, 237 (Tex. Crim. App. 2018); *Almanza*, 686 S.W.2d at 171.

## B.    Applicable Law

A jury must reach a unanimous verdict in order to convict. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020); *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014); *see Cada v. State*, 334 S.W.3d 766, 772–73 (Tex. Crim. App. 2011) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged."). Non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions, and the charge fails to properly instruct the jury that its verdict must be

unanimous. *Cosio v. State*, 353 S.W.3d 766, 771–72 (Tex. Crim. App. 2011). The unanimity requirement is not violated where a jury is presented with alternative theories of committing the same offense. *See Cosio*, 353 S.W.3d at 771–73; *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *see also Parnell v. State*, No. 13-16-00038-CR, 2017 WL 3769726, at *7 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding the trial court's charge did not violate the unanimity requirement where appellant was indicted for a single offense of retaliation, and the State alleged he committed it in one of two alternative ways—by threatening to kill the complainant or telling her to watch her life).

Retaliation contains eight different elements, *see* TEX. PENAL CODE ANN. § 36.06, and several of those elements include distinct alternatives, which may or may not be included in a particular indictment and jury charge. *See Cada*, 334 S.W.3d at 770; *see also Parnell*, 2017 WL 3769726, at *6–7. In *Cada*, the Texas Court of Criminal Appeals broke down each of the elements for retaliation:

(1) The Defendant

(2) a. intentionally [or]
    b. knowingly

(3) a. harms [or]
    b. threatens to harm

(4) another person

(5) by an unlawful act

(6) a. In retaliation for [or]
    b. on account of

(7) a. the service of another [or]
    b. the status of another

15

  (8)  as a
      a.  public servant
      b.  witness
      c.  prospective witness [or]
      d.  informant.

*Cada*, 334 S.W.3d at 770–71. The Court explained that although "[t]he indictment and jury charge must contain at least one item from each numbered element[,] . . . it may contain more than one alternative element (e.g., the indictment might list 'a public servant, witness, prospective witness, or informant')." *Id.* (quoting TEX. PENAL CODE ANN. § 36.06).

Where the State presents evidence of two separate offenses of retaliation, the trial court must instruct the jury that it cannot return a guilty verdict unless it unanimously agrees upon which offense the defendant committed beyond a reasonable doubt. *See Cosio*, 353 S.W.3d at 776; *Soto v. State*, 267 S.W.3d 327, 335 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.).

**C. Analysis**

Gosalvez argues the jury heard evidence of two separate retaliation offenses: one which occurred the night Gosalvez was arrested and another about one year later when Gosalvez sent a "friend request" to Trooper Mendez's wife on Facebook. Gosalvez concludes the guilty verdict cannot stand because the jury was not instructed on the need to unanimously find one criminal act of retaliation beyond a reasonable doubt. *See Cosio*, 353 S.W.3d at 776.

The elements of retaliation as charged in the indictment are as follows: (1) Gosalvez (2) intentionally or knowingly (3) threatened to harm (4) Trooper Mendez (5) by an unlawful act (namely, assault) (6) in retaliation for or on account of (7) his service

16

(8) as a public servant.[5] *See* TEX. PENAL CODE ANN. § 36.06; *Cada*, 334 S.W.3d at 770–71. The State is only required to "prove the statutory elements that it has chosen to allege," *see Cada,* 334 S.W.3d at 776, and the only evidence of a threatened assault by Gosalvez in retaliation for Trooper Mendez's actions as an officer occurred on the day of Gosalvez's arrest. Gosalvez conceded as much at trial. The State also made clear its position in its closing arguments of the evidence it had presented in support of retaliation as charged.[6] Under these circumstances, it cannot be said that the State presented evidence of two distinct offenses of retaliation from which the jury had to choose. *Cf. Baker v. State*, 521 S.W.2d 864, 865 (Tex. Crim. App. 1975) ("reject[ing] the contention

---

[5] The jury charge read in applicable part:

. . . in Cameron County, Texas, the defendant, DAVID GOSALVEZ, III, did then and there, intentionally or knowingly threaten to harm another, to-wit: Trooper Eulalio Mendez, by an unlawful act, to-wit: ASSAULT, in retaliation for, or on account of, the service of Trooper Eulalio Mendez as a public servant, to-wit: Peace Officer investigating a crime or criminal activity . . .

[6] Although the State and Gosalvez made brief references to Gosalvez's social media contact, the crux of both arguments centered on the threats Gosalvez made to Trooper Mendez on the evening of his arrest. The State argued in applicable part:

I'm not going to read the vulgar things that he said again to you all, but I want you to pay attention to this chart. These are every single threat he made. Ladies and gentlemen, we went over this in voir dire: Words enough are alone. There doesn't have to be any action towards—from the defendant to effectuate the acts. Again, that's what's confused [sic], there doesn't have to be. However, he does effectuate it. He charges at him. He kicks him. He effectuates the assault. These words are enough. Let's count them, one statement, two statements, three statements, four statements, five statements, six, seven, eight, nine, ten, 11, 12, 13, 14. That's just—this is not all of them. He made 14 threats against the State Trooper that night.

. . . .

[Y]ou're not allowed to sit there and tell a trooper that you hope that he has kids and you don't know who he knows. You're not allowed to say, "You better hope your family is secure." You're not allowed to say, "You're going to get it, brother." You're not allowed to say those things to officers. Words enough are alone, ladies and gentlemen—ladies of the jury. So, please, when you go back there, find the defendant guilty of retaliation against Trooper Mendez.

17

that the separate telephone threats constituted by a single transaction" when evidence indicated the complainant received a "telephone call threatening her life" on one day and two more such calls threatening her life on a separate day). Moreover, to the extent Gosalvez suggests the existence of multiple threats occurring during the traffic stop on March 13, 2018, created multiple retaliatory offenses, the jury was not required to agree on one specific threat; they only had to unanimously agree that Gosalvez committed the offense by making a retaliatory threat of assault. *See Cada*, 334 S.W.3d at 776; *see also Shahzada v. State*, No. 05-17-00391-CR, 2018 WL 6322112, at *10 (Tex. App.—Dallas Dec. 4, 2018, pet. ref'd) (mem. op., not designated for publication).

On the particular facts of this case, the failure of the trial court to expressly require jury unanimity was not erroneous because there was no evidence of a second offense of retaliation from which the jury could convict. *See Jourdan*, 428 S.W.3d at 94; *Cada*, 334 S.W.3d at 772–73. Because there was no error, we need not determine whether Gosalvez was egregiously harmed. *See Chambers*, 580 S.W.3d at 154; *Cada*, 334 S.W.3d at 776. We resolve Gosalvez's second issue against him.

## IV.    EXTRANEOUS OFFENSES

By Gosalvez's third issue, he argues the court committed reversible error in admitting evidence of extraneous offenses in contravention of Rule 403. *See* TEX. R. EVID. 403.

### A.    Standard of Review

We review a trial court's decision on admissibility of extraneous-offense evidence under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 316 (Tex. Crim. App. 2016) (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). We will

18

uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement and as long as it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). An appellate court may not disturb an admissibility decision solely because the appellate court would have reached a different conclusion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). Instead, a "trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Montgomery*, 810 S.W.2d at 380).

## B.    Applicable Law

Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403(b)(1). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gerron v. State*, 524 S.W.3d 308, 321 (Tex. App.—Waco 2016, pet. ref'd) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gittens v. State*, 560 S.W.3d 725, 732 (Tex. App.—San Antonio 2018, pet. ref'd).

A Rule 403 ruling should be analyzed within the context of that particular trial, considering "the ebb and flow of trial testimony, the unique circumstances and facts, and the specific contested issues." *State v. Mechler*, 153 S.W.3d 435, 443 (Tex. Crim. App. 2005) (Cochran, J., concurring) (citation omitted). A Rule 403 challenge requires the trial court to balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez*, 544 S.W.3d at 372 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). The Texas Court of Criminal Appeals has cautioned that in reviewing a trial court's Rule 403 balancing determination, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). In overruling a Rule 403 objection, the trial court is presumed to have applied a Rule 403 balancing test and to have determined that the evidence was admissible. *See Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd); *see also Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (providing that Rule 403 does not require that the balancing test be performed on the record).

## C. Analysis

At trial, Gosalvez made several statements indicating his unfamiliarity with the criminal justice system during direct examination. Specifically, he stated he had never been convicted of a felony or crime of moral turpitude, and during cross-examination, he

stated: "I've never really been in trouble, ma'am. I couldn't tell you how the law works. I didn't even know a state trooper from [a police department officer]." The State thereafter sought to introduce evidence of Gosalvez's prior arrests for assault family violence and violation of a protective order, arguing Gosalvez had "opened the door" to that evidence. *See Daggett v. State*, 187 S.W.3d 444, 453 n.24 (Tex. Crim. App. 2005) (providing that when a witness makes a broad statement of good conduct or character directly relevant to the offense charged, an opponent may offer extrinsic evidence rebutting the statement). During a bench conference, Gosalvez objected, and we interpret Gosalvez's objection as a Rule 403 objection,[7] which comports with the argument presented on appeal.

As explored *infra*, evidence of the extraneous offense here—Gosalvez's arrest history—was probative to rebut Gosalvez's claims of his unfamiliarity with the criminal justice system—which went, in part, to Gosalvez's defensive theory that he was a law-abiding citizen and of "no threat to society." We first observe that the extraneous offenses were similar to the charged offense in that the offenses contained allegations that Gosalvez had assaulted or threatened to assault another. Whenever the extraneous offense is similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996); *see also Trevino v. State*, No. 13-15-00010-CR, 2016 WL 8921928, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2016, no pet.) (mem. op., not designated for publication). However, the arrests for assault family violence and violation of a protective order, both misdemeanors, were less serious than

---

[7] Gosalvez's counsel argued: "What I'm saying is, what does—wouldn't the prejudicial [e]ffect of that statement outweigh its probative value?"

the felony offense forming the basis for the indictment. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (considering whether the extraneous offense evidence was "no more serious than the allegations forming the basis for the indictment"); *see also Davila v. State*, No. 13-18-00298-CR, 2019 WL 3227263, at *3 (Tex. App.—Corpus Christi–Edinburg July 18, 2019, no pet.) (mem. op., not designated for publication) (considering the same). Moreover, Gosalvez testified that charges relating to the prior arrests were dismissed, and the limited evidence concerning those arrests was no more salacious than the evidence presented concerning the retaliation offense. *See Robisheaux*, 483 S.W.3d at 220; *see also Killinger v. State*, No. 13-17-00016-CR, 2020 WL 728305, at *8 (Tex. App.—Corpus Christi–Edinburg Feb. 13, 2020, pet. ref'd) (mem. op., not designated for publication).

The jury was instructed that they were not to consider Gosalvez's other arrests as evidence of his guilt in this case. The court's limiting instruction in the charge minimized any risk that the jury would consider the substance of the State's questioning on this matter for any improper purpose or give Gosalvez's responses undue weight. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011) (noting that jury is presumed to have understood and followed trial court's jury-charge instructions absent evidence to the contrary); *Harris v. State*, 572 S.W.3d 325, 334 (Tex. App.—Austin 2019, no pet.) (providing that impermissible inference of character conformity can be minimized through a limiting instruction). Therefore, any danger of a decision on an improper basis here was ameliorated. *See Ryder v. State*, 581 S.W.3d 439, 454 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Robisheaux*, 483 S.W.3d at 220).

We further note that the type of evidence presented did not require expertise or specialized consideration as it was not scientific or technical in nature. *See Gigliobianco*, 210 S.W.3d at 641–42. Thus, there was no tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See id.*

Finally, we evaluate the length of time during trial that the proponent required to develop the evidence of the extraneous offense. The presentation of Gosalvez's arrest history was raised by four questions and never referenced again.[8] In other words, it was neither cumulative of other evidence nor did it take an inordinate amount of time to present. Testimony of Gosalvez's arrest history consumed less than a page in one volume of trial testimony; whereas, the entire guilt-innocence portion of trial spanned two volumes and more than 300 pages. *See Lane*, 933 S.W.2d at 520 (holding that extraneous-offense testimony amounting to "less than one-fifth" of trial testimony favored admission); *compare Buxton v. State*, 526 S.W.3d 666, 692 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding that twenty-one pages out of 205 pages was not unduly time

---

[8] [State:] Mr. Gosalvez, you just made a representation to the jury that you've never been [in] trouble before; is that correct?

[Gosalvez:] Yes.

[State:] And, in fact, on December 23rd of 2017, you were arrested by the McAllen Police Department for assault family violence; is that not true?

[Gosalvez:] That is true. Charges were dropped.

[State:] And on February 5th of 2018, a little bit—a month before this incident, you were arrested for violation of protective order; is that not true?

[Gosalvez:] It is true.

[State:] So you have been in trouble before?

[Gosalvez:] All this happened in a matter of three months. The charges were dropped for false accusation [sic].

23

consuming) *with Newton v. State*, 301 S.W.3d 315, 322 (Tex. App.—Waco 2009, pet. ref'd) (noting that 116 pages of testimony out of 426 pages, over three-and-a-half days, weighed in favor of exclusion).

Rule 403 requires "clear disparity" between unfair prejudice and probative value for exclusion. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). No such "clear disparity" exists here. *See id.*; *see also Gonzalez*, 544 S.W.3d at 373 ("Rule 403 is only concerned with 'unfair' prejudice."). Gosalvez's statements made it necessary for the State to correct the false impression that Gosalvez left with the jury. *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) ("Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. A party opens the door by leaving a false impression with the jury that invites the other side to respond.") (internal citations omitted). Given our standard of review, the presumption in favor of admissibility, and the factors discussed above, we cannot conclude that the trial court abused its discretion when it found that the probative value of the evidence of Gosalvez's arrest history was not substantially outweighed by the countervailing factors specified in the rule. *See Hammer*, 296 S.W.3d at 568; *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001); *see also Foster v. State*, No. 13-18-00051-CR, 2018 WL 6626728, at *7 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication) ("When the trial court exercises its discretion not to exclude evidence by finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, we give deference to that decision."). Consequently, we reject the contention that the trial court erred by admitting the challenged evidence. Gosalvez's third issue is overruled.

## V.    CUMULATIVE ERROR

By his fourth issue, Gosalvez alleges that the previous alleged errors cumulatively caused him harm, requiring a reversal.

The doctrine of cumulative error provides that the cumulative effect of multiple errors can, in the aggregate, constitute reversible error, even though no single instance of error would. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see Jenkins v. State*, 493 S.W.3d 583, 613 (Tex. Crim. App. 2016). However, the Texas Court of Criminal Appeals has held that there is "no authority holding that non-errors may in their cumulative effect cause error." *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *see Jenkins*, 493 S.W.3d at 613; *Temple v. State*, 342 S.W.3d 572, 612 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) (providing that reviewing courts do not consider the effect of waived errors under the cumulative error doctrine); *see also Escobedo v. State*, No. 13-19-00205-CR, 2020 WL 6052549, at *6 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2020, no pet.) (mem. op., not designated for publication) (concluding non-errors may not produce harm in their cumulative effect). Because we have found no error in our analysis of Gosalvez's previous issues, there is no error to cumulate, and we overrule Gosalvez's fourth issue.

## VI.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of March, 2021.

25